IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHAWNA McKINNEY, *et al.*,           §
                                     §
          Plaintiffs,                §
                                     §
v.                                   §          Civil Action No. 3:22-CV-2264-N
                                     §
JOHNSON COUNTY, TEXAS, *et al.*,     §
                                     §
          Defendants.                §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Johnson County, Adam King, David Blankenship, Bryan Gordy, Ashley Lawrence, Michal Tunnel, Aimee Fuller, Brittany Frias, Kristi Roden, Abel Flores, MacKensie Young, and Nelida Arevalo-Braddick's (collectively "Defendants") motion to dismiss [22]. For the following reasons, the Court grants in part and denies in part the motion.

### I. ORIGINS OF THE DISPUTE

Plaintiffs Shawna McKinney, Mary Garcia, and Chayce McKinney (collectively "Plaintiffs") filed this lawsuit in response to Donald Eugene McKinney's death while in custody. Plaintiffs seek relief under 42 U.S.C. § 1983 and section 71.002 of the Texas Civil Practice and Remedies code against Johnson County and several individual defendants. Plaintiffs allege that Defendants violated McKinney's constitutional right to adequate medical care and were deliberately indifferent to his serious medical needs. Defendants filed the instant motion to dismiss seeking dismissal of all claims against all defendants.

MEMORANDUM OPINION AND ORDER – PAGE 1

When McKinney first arrived at Johnson County jail, he had already been diagnosed with HIV and pulmonary fibrosis, but consistently took medications that kept his health stable and had a prognosis to live for years if treated properly.  Pls.' Second Am. Compl. ¶ 3 [19].[1]  McKinney was arrested for a probation violation when he triggered the alcohol interlock on his automobile.  Pls.' Second Am. Compl. ¶ 27.  As a result of this probation violation, Judge Bridewell in the 249th District Court of Texas sentenced McKinney to two years of confinement, minus credit for 456 days.  *Id.*; Ex A.  McKinney was incarcerated in the Johnson County Jail starting January 24, 2022.  *Id.* at ¶ 28.  On February 1, 2022, McKinney submitted a grievance that the prison withheld 14 doses of his needed medications.  *Id.* at ¶ 31 (citing Ex. B).  At the request of McKinney's attorney, the day after filing the grievance, Judge Bridewell held an emergency hearing and ordered the jail to administer McKinney's medications.  *Id.* (citing Ex. A, C).  Despite the court order, over the next six weeks McKinney submitted twelve separate grievances and requests documenting the failures of the prison staff to follow the court order and provide his medication.  *Id.* (citing Ex. B-N).  In this documentation, McKinney described his worsening condition due to missing many consecutive doses, jail staff substituting his medication in defiance of the court order, his pleading to jailers and nurses to provide him with medication, and his genuine fears that he would die if this treatment continued.  *Id.*  McKinney was released on April 7, 2022, and admitted to Southwest Hospital on April 20, 2022.  *Id.* at ¶ 35.  For approximately two weeks McKinney received urgent treatment at

---

[1] In the context of a motion to dismiss, the Court takes well-pled facts in the complaint as true.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

MEMORANDUM OPINION AND ORDER – PAGE 2

the hospital, but the doctors determined that McKinney's condition was terminal and he died on May 13, 2022. *Id.* at ¶ 35.

McKinney's death marks the fourth death since 2011 at the Johnson County Jail in connection to inadequate medical care while in custody. *Id.* at ¶ 4. In the years preceding McKinney's incarceration, Johnson County Jail was managed by LaSalle Corrections. Cite. However, five months before McKinney's incarceration, Johnson County terminated its management contract with LaSalle Corrections. *Id.* at ¶ 2. LaSalle Corrections managed several other jails and prisons where more inmates suffered from inadequate medical care. *Id.* at ¶ 5. Plaintiffs allege that regardless of Johnson County taking back management of the Johnson County Jail, LaSalle's "established pattern and practice of neglecting the medical needs of inmates continued as an embedded practice [in the Johnson County Jail], either intentionally or as the result of a failure to adopt proper procedure and supervision." *Id.* at ¶ 2. Defendants now move to dismiss all claims against them.

## II.  RULE 12(B)(6) LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines*, 699

MEMORANDUM OPINION AND ORDER – PAGE 3

F.3d at 816. But a court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a

court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

### III.  SHAWNA MCKINNEY HAS STANDING TO SUE AS EXECUTRIX OF MCKINNEY'S ESTATE

Plaintiffs bring a wrongful death claim under section 71.002 of the Texas Civil Practice and Remedies code.  Section 71.004 specifies that the surviving spouse, children, or parents are beneficiaries of the act and have the power to bring a cause of action in a wrongful death claim seeking their personal damages for, e.g., loss of companionship, physical pain, and mental anguish, from the decedent's death.  TEX. CIV. PRAC. & REM. CODE § 71.004; *Cunningham v. Haroona*, 382 S.W.3d 492, 508 (Tex. App.—Fort Worth 2012, pet. Denied) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009). As sister to McKinney, Shawna McKinney is not a beneficiary of the act and does not have standing to sue in her individual capacity.  However, "[i]f none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action [for the benefit of the individuals] unless requested not to by all those individuals." TEX. CIV. PRAC. & REM. CODE § 71.004.  Shawna McKinney filed the Original Complaint five months after Donald McKinney's death as Independent Executrix of his estate.  Shawna McKinney satisfies the requirements for standing to sue under the wrongful death statute as executrix of the estate.

As noted above, although Shawna McKinney has standing to bring wrongful death claims as executrix of Donald McKinney's estate on behalf of the statutory beneficiaries,

she does not have standing to bring a survival claim[2] in an individual capacity. Under Texas law the representative of an estate can bring a survival action when "the actionable wrong is that which the decedent suffered before his death for which he would have been able to bring an action had he lived." *Id.* § 71.021; *Gantt v. Harris Cnty.*, 674 S.W.3d 553, 560 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); *In re Jindal Saw Ltd.*, 264 S.W.3d 755, 765–66 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding)). But the damages recoverable in a survival action "are those which [the decedent] himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs." *Russell*, 841 S.W.2d at 345. Shawna McKinney individually does not bring a traditional survival claim. Instead, in her response to this motion, Shawna McKinney asserts individual standing for the personal wrongs she experienced under the theories of bystander liability and intentional infliction of emotional distress, which are not acceptable theories of recovery under a survival action. *See* Pls.' Resp. 8-9 [25].

Furthermore, Plaintiffs pled no facts alleging these theories of harm in any of their Complaints. *See* Pls.' Original Compl, [1]; Pls.' First Am. Compl. [5]; Pls.' Second Am. Compl. "Generally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court

---

[2] Plaintiffs do not mention a survival claim in their briefing for this motion or in any of their complaints. *See.* Pls.' Resp.; Pls.' Original Compl, [1]; Pls.' First Am. Compl. [5]; Pls.' Second Am. Compl. Nevertheless, the Court seeks to clarify what damages are recoverable under either a wrongful death claim or under a survival claim and who are the proper parties to bring either action as the Plaintiffs muddle the two claims.

should determine whether leave should be granted." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549, F.3d 985, 989 n.2 (5th Cir. 2008)).  Plaintiffs amended their complaint twice without adding Shawna's bystander liability and intentional infliction of emotional distress claims. *See* Pls.' Original Compl.; Pls.' First Am. Compl.; Pls.' Second Am. Compl.  Now it is too late to amend.  *See Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) ("[R]epeated failures to cure deficiencies by amendments previously allowed" supports a court's denial of a party's request for leave to amend.).  Furthermore, an amendment is futile because Johnson County maintains sovereign immunity over these state law claims and the Texas Tort Claims Act ("TTCA") bars these claims against the individual defendants, as detailed below in Section VII.  In conclusion, Shawna McKinney does not have standing to assert claims in her individual capacity but maintains standing as Independent Executrix of the Estate of Donald Eugene McKinney.

## IV.  CHAYCE MCKINNEY AND MARY GARCIA HAVE STANDING TO SUE ONLY IN THEIR INDIVIDUAL CAPACITIES

The Second Amended Original Complaint adds as named plaintiffs, Chayce McKinney, son of decedent, and Mary Garcia, mother of decedent.  *See generally* Pls.' Second Am. Compl.  Chayce McKinney and Mary Garcia have standing to bring a wrongful death claim in their individual capacities under section 71.004 as surviving mother and son.  They do not have standing to sue on behalf of the Estate of Donald Eugene McKinney because Shawna McKinney, as "the estate's personal representative[,] generally has the exclusive rights to bring such suits" and no exceptions to this general rule applies

MEMORANDUM OPINION AND ORDER – PAGE 7

to this case. *Jordan v. Lyles*, 455 S.W.3d 785, 790 (Tex. App.—Tyler 2015, no pet.) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998); *Protho v. Zapata*, 157 S.W.3d 832, 839 (Tex. App.—Fort Worth 2005, no pet.))

### V.  PLAINTIFFS PLED SUFFICIENT FACTS AGAINST INDIVIDUAL DEFENDANTS TO OVERCOME QUALIFIED IMMUNITY

"Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Because qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that it does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

### A.  An Inmate's Constitutional Right to
### Adequate Medical Care While in Custody

To state a claim against an individual under section 1983, a plaintiff must allege facts showing how that individual defendant participated in the alleged deprivation of a person's constitutional rights.  *Palm v. Marr*, 174 F. Supp. 2d 484, 488 (N.D. Tex. 2001) (citing *Lonzano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).  A prison or jail official can be found liable under the Fourteenth Amendment for acting with deliberate indifference to a pretrial detainee's medical needs. *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019). Following sentencing, an inmate maintains their right to not have their medical needs met with deliberate indifference under the Eighth Amendment's ban on cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  A prison or jail official acts with deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### 1. *Plaintiffs Pled Sufficient Facts That the Defendants Involved With the Grievance Review Process Were Deliberately Indifferent to McKinney's Medical Needs.*

– Plaintiffs' second amended complaint outlines the series of grievances and requests submitted from February 1, 2022 to March 14, 2022.  Pls.' Second Am. Compl. ¶ 31 (citing Ex. B-N).  In his first grievance, McKinney states that he had his "medication with held [sic] for 14 treatment doses" and "the abrupt [sic] stop is caus[ing him] nausea, dizziness, diareah [sic], shortness of breath, cough with blood clotting and migraines."  *Id.*  (citing

Ex. B).  The day after this grievance, the sentencing Judge in Johnson County held an emergency hearing and ordered the jail to administer McKinney's medications to him.  *Id.* (citing Ex. A (specifically instructing McKinney receive 100mg of OFEV 2 times a day, Symtuza once a day, and his Breo inhaler)).  Despite this court order, over a six-week period, the prison staff failed to administer McKinney's medication to him with any regularity.  *Id.*  In subsequent requests and grievances McKinney documented the missed doses, incorrectly substituted medicine, and his worsening condition.  *Id.*  He states in three separate grievances that he will die without the consistent administration of his medication. *Id.* (citing Ex. H, I, K).

Defendants Bryan Gordy, Kristi Roden, Ashley Lawrence,[3] MacKenzie Young, and Nelida Arevalo-Braddick were all named "users" in the documentation of the jail's processing of McKinney's grievances and requests.  *Id.* (citing Ex. B-N).  Each individual user marked a grievance as "closed" despite McKinney's persistent follow-up grievances that he had not received his court ordered medication with any regularity.  *Id.*  These factual allegations against the above-named Defendants are specific enough to state a plausible claim that each Defendant possessed the requisite awareness of the risk of harm and exhibited deliberate indifference to McKinney's constitutional rights.  Accordingly, the Court denies the motion to dismiss the section 1983 claims against Defendants Bryan

---

[3]Though Ashley Lawrence was never a listed "user," she signed off on several internal notes saying "your medications have been ordered and you are receiving them" in response to user Kristi Roden changing the status of McKinney's grievances to closed. *See* Ex. F-H, K.

MEMORANDUM OPINION AND ORDER – PAGE 10

Gordy, Kristi Roden, Ashley Lawrence, MacKenzie Young, and Nelida Arevalo-Braddick in their individual capacities.

*2. Plaintiffs Pled Sufficient Facts to Establish a Claim That Michal Tunnel and Abel Flores, as Jailers, Were Deliberately Indifferent to McKinney's Medical Needs.* – A jailer's refusal to administer medical care amounts to deliberate indifference. *See Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018) (A "plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." (internal quotation marks omitted)).  The complaint alleges that McKinney verbally complained to jailers that he was not receiving his medication or at least not receiving it consistently as required by court order.  Pls.' Second Am. Compl. ¶ 30.  Plaintiffs allege that these repeated complaints to the jailers establish that Michal Tunnel and Abel Flores "actually knew that McKinney was in dire need of medical assistance but failed to follow through and correct the inactivity of other jail employees." *Id.* ¶¶ 15, 19.  These factual allegations are specific enough to state a plausible claim that Defendants Tunnel and Flores possessed the requisite awareness of the risk of harm and exhibited deliberate indifference to McKinney's constitutional rights.  Accordingly, the Court denies the motion to dismiss the section 1983 claims against Defendants Tunnel and Flores.

*3. Plaintiffs Pled Sufficient Facts That Aimee Fuller and Brittany Frias, as Medical Staff, were Deliberately Indifferent to McKinney's Medical Needs.* – The complaint alleges that Aimee Fuller "had actual knowledge of the specific medication

ordered to be given to McKinney by the presiding judge, advised that this was not going to be done and that instead they were searching for a cheaper alternative." *Id.* at ¶ 28. Additionally, the complaint alleges that Brittany Frias "actually knew that McKinney was in dire need of medical assistance but failed to follow through and correct the inactivity of other Jail employees, thereby exhibiting deliberate indifference to his serious medical condition." *Id.* Furthermore, in the documented grievances, McKinney named both Nurse Fuller and Nurse Frias and his efforts to inform them of his medical needs and deteriorating condition, demands for consistent administration of medication, and insistence that the jail staff follow the court order for said medication. *Id.* at ¶ 31 (citing Ex. B, E-L). These factual allegations against Defendants Fuller and Frias are specific enough to state a plausible claim that each of them possessed the requisite awareness of the risk of harm and exhibited deliberate indifference to McKinney's constitutional rights. Accordingly, the Court denies the motion to dismiss the section 1983 claims against Defendants Fuller and Frias.

### B. The Standard for Supervisory Liability

"Liability under Section 1983 for a supervisor may exist based either on '(1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Absent "overt personal participation" in the events that give rise to the alleged constitutional violations, a plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to

train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* at 274 (quoting *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005)).   Deliberate indifference is a "'conscious' choice to endanger constitutional rights." *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)).   In general, proof of deliberate indifference requires a showing of "more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).   "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training [or supervision] is 'obvious and obviously likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).

### 1. Plaintiffs Failed to Plead Sufficient Facts to Establish Supervisory Liability Claims Against Sheriff Adam King and Chief Deputy David Blankenship in Their Individual Capacity.

*Individual Capacity.* **–** Plaintiffs did not plead that Defendants King and Blankenship were overtly involved in McKinney's medical care.   Instead, Plaintiffs allege that Defendant King "negligently and carelessly delegated responsibility for administration of medication and provision of adequate medical care to persons under his direct control and supervision but failed and refused to supervise." Pls.' Second Am. Compl. ¶ 28.   Plaintiffs allege that this failure to supervise included failure to receive notifications through the grievance procedure. *Id.*   As for Defendant Blankenship, Plaintiffs allege that he "is the Chief Deputy reporting directly to Defendant King, thereby assuming the same responsibilities as King

MEMORANDUM OPINION AND ORDER – PAGE 13

for, among other matters, overall supervisions of personnel providing medical care for inmates," but "did absolutely nothing to assure compliance with the judicial directive to provide necessary medications for McKinney." *Id.* Though Plaintiffs state specific facts to allege that King and Blankenship failed to supervise and there was a causal connection between the failure to supervise and the constitutional violation, the complaint does not allege a pattern of sufficiently similar constitutional violations. Plaintiffs allege that there have been three inmate deaths at Johnson County Jail between 2011–2015 resulting from inadequate medical care, but the complaint does not allege facts showing Defendants failed to provide an inmate with their court order medical care beyond the incident giving rise to this lawsuit. Therefore, the Court dismisses Plaintiffs' claims for failure to supervise against Defendants King and Blankenship.

### 2. Plaintiffs Pled Sufficient Facts to Establish Supervisory Liability Claims Against Captain Brian Gordy and Ashley Lawrence in Their Individual Capacity. –

Plaintiffs allege that, like Defendants King and Blankenship, Defendant Gordy "supervised, and oversaw the administration and management of the Johnson County employees . . . and was responsible for ensuring the presence and implementation of proper policies, procedures, and training of the medical staff, as evidenced by his signature on the official Medical Policies and Procedures Manual for Johnson County." *Id.* Furthermore, as evidenced by his managing of several of McKinney's grievances, Defendant Gordy was personally aware of and involved in the jail's failure to provide McKinney with his court ordered medication and the risk of harm associated with inconsistent and delayed administration of the medication. *Id.* Despite his role as supervisor and personal

knowledge of nurses "Fuller and Frias's defiance and disobedience of the court order," Defendant Gordy "failed and refused to have this corrected," amounting to deliberate indifference.  *Id.*  Plaintiffs plead sufficient facts to establish that defendant Gordy had personal involvement in the constitutional violation and was deliberately indifferent to rectifying McKinney's harm.  Therefore, the Court denies the motion to dismiss the supervisory liability claim against Defendant Gordy in his individual capacity.

Similarly, Plaintiffs allege that Defendant Ashley Lawrence as the Health Services Administrator was "in charge of supervising and administering the procedures and implementation of delivery of medical services for the inmates of the Johnson County Jail . . . and oversees and supervises the delivery of nursing and other medical care in the Jails, including standards of medical care and utilization review." *Id.* at ¶ 14.  Furthermore, Plaintiffs allege Lawrence showed "careless and reckless disregard for health and safety of inmates," including McKinney and failed to "supervise properly the nurses, nurse aides, and medical assistants working under her" and failed to monitor grievances submitted by McKinney to ensure medical staff performed properly. *Id.* ¶ 28.  Plaintiffs pled sufficient facts to establish that Defendant Lawrence had personal involvement in the constitutional violation and was deliberately indifferent to rectifying McKinney's harm.  Therefore, the Court denies the motion to dismiss the supervisory liability claim against Defendant Lawrence.

### C.  The Court Declines to Dismiss
### Claims Against Unserved Defendants

Defendants argue that "when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants." *Doggins v. Green*, 2020 WL 6482981, at *3 n.4 (E.D. Tex. Aug. 17, 2020) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).  Because the Court determines that Plaintiffs pled sufficient facts to support allegations against nine individual Defendants, the claims against unserved defendants remain.  Accordingly, the Court denies dismissal of claims against unserved Defendants.

### VI.  PLAINTIFFS PLED SUFFICIENT FACTS TO STATE A CLAIM
### FOR *MONELL* LIABILITY AGAINST JOHNSON COUNTY

Section 1983 does not permit vicarious liability for municipalities.  A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).  Municipality or corporate liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

### A.  Plaintiffs Adequately Pled a Custom
### or Policy with Respect to Johnson County

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

MEMORANDUM OPINION AND ORDER – PAGE 16

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).  Plaintiffs do not allege any official statement or regulation.  Instead, Plaintiffs allege a widespread custom of deliberate indifference to prisoners' medical needs.  Pls.' Second Am. Compl. ¶ 4.

A single act or incident is not a custom.  "There must be a 'persistent and widespread practice'" to establish a custom.  *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (quoting *Piotrowski*, 237 F.3d at 581).  Plaintiffs have plausibly alleged a pattern of conduct among Johnson County's staff constituting a failure to provide necessary medical treatment resulting in unnecessary deaths to three additional inmates in Johnson County Jail from 2011–2015.  Pls.' Second Am. Compl. ¶4.  Defendants argue these allegations are insufficient to establish the existence of a custom or policy in 2022 because the previous deaths are not recent and occurred when the jail was operated by an outside company.  Defs.' Mot. to Dismiss 28 [22].  Plaintiffs respond that the previous operation of the jail by a private company established a *de facto* custom of deliberate indifference to prisoner's medical needs and this *de facto* custom carried over when Johnson County took control of operations, continuing the same pattern of deliberate indifference to inmate medical needs as established by the private company.  Pls.' Second Am. Compl. ¶¶ 37-38.  Even if these

MEMORANDUM OPINION AND ORDER – PAGE 17

incidents would ultimately be insufficient to establish liability, the Court holds the allegations are sufficient at the motion to dismiss stage to allow the Court to draw a reasonable inference that Johnson County is liable for the misconduct alleged. Therefore, Plaintiffs' allegations of custom are sufficient to survive a motion to dismiss if the complaint alleges actual or constructive knowledge of this pattern of conduct by an identifiable governing body or policymaker.

### B. *Plaintiffs Stated Sufficient Facts to Plausibly Allege Policymakers Knew of the Custom*

The precise identity of a policymaker is a question of law, but a plaintiff must still allege that "'[a]ctual or constructive knowledge of such custom' is attributed to a . . . policymaker" to hold a municipality liable. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Blanchard-Daigle v. Greers*, 802 F. App'x 113, 117 (5th Cir. 2020) ("Indeed, we said that naming the entity that acted under the policy was fundamental." (citing *Groden v. City of Dallas*, 826 F.3d 280, 284 n.4 (5th Cir. 2016))).

Plaintiffs name four people they allege are policymakers: Defendants Adam King, David Blankenship, Bryan Gordy, and Ashley Lawrence. It is undisputed that Defendant King, as Sheriff, is a policymaker. Plaintiffs allege Defendants Blankenship, Gordy, and Lawrence are also policymakers with respect to the operations of the jails and delivery and operation of medical care for inmates, but that "Plaintiff is unable to determine at this time, before any discovery, which aspects of the jail each of these three is primarily responsible over." Pls. Resp. 36-37. Defendants argue that "Plaintiffs' bare allegations that

MEMORANDUM OPINION AND ORDER – PAGE 18

Blankenship, Gordy, and Lawrence had 'supervisory responsibility' or oversaw the day-to-day operation of the jail is not the equivalent of having final policymaking authority." Defs.' Mot. to Dismiss 23.  But at the pleading stage, Plaintiffs are not required to "supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme." *Groden*, 826 F.3d at 282.  Plaintiffs are required to plead some "facts [that] establish that the challenged policy was promulgated or ratified by the city's policymaker." *Id*.

Plaintiffs allege King, as Sheriff, Blankenship, as Chief Deputy, and Gordy, as Captain, were in charge of supervising and managing all Johnson County employees and were "responsible for ensuring the presence and implementation of proper policies, procedures, and training of the medical staff, as evidence by his signature to the official Medical Policies and Procedures Manual for Johnson County."  Pls.' Second Am.Compl. ¶¶ 11-13.  As Health Services Administrator, Lawrence supervised and managed the medical services delivered to inmates and was "responsible for establishing and ha[d] final approval on implementation and performance of the official policies, procedures, and practices" for the Johnson County medical staff.  *Id.* ¶ 14.  The Complaint also alleges enough facts, such as other specific inmate deaths at the Johnson County facility, to plausibly claim these officials had actual or constructive knowledge of the widespread practice.  These allegations are sufficient to plead this element of municipal liability with respect to Johnson County, the entity that directly employs King, Blankenship, Gordy, and Lawrence.  Therefore, the Court denies the motion to dismiss as to the section 1983 *Monell* claims against Johnson County.

MEMORANDUM OPINION AND ORDER – PAGE 19

## VII.  THE COURT DISMISSES PLAINTIFFS'
## STATE COMMON LAW CLAIMS

Johnson County retains its sovereign immunity for state common law torts claims.

"Unless the Texas Tort Claims Act waives immunity, a municipality is immune from suit

and from tort liability for its own acts or the acts of its agents for its governmental

functions." *Gipson v. City of Dallas*, 247 S.W.3d 465, 469 (Tex. App.—Dallas 2008, pet.

denied) (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

The TTCA provides that a governmental unit is liable for:

> (1) property damage, personal injury, and death proximately caused by the
> wrongful act or omission or the negligence of an employee acting within
> his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the
>> operation or use of a motor driven vehicle or a motor driven
>> equipment; and
>>
>> (B) the employee would be personally liable to the claimant according
>> to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible,
> personal or real property if the governmental unit would, where it a private
> person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.  Plaintiffs assert no set of facts that fall within

the parameters of these exceptions for liability for either their negligence, gross negligence,

or bystander liability claims against the county.  Furthermore, the TTCA does not apply to

claims arising from intentional torts, effectively precluding Plaintiff Shawna McKinney's

individual claim of intentional infliction of emotional distress against the county.

*Id.* § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery,

false imprisonment, or any other intentional tort . . . ."); *Benefit Realty Corp. v. City of Carrollton*, 141 S.W.3d 346, 349 (Tex. App. — Dallas 2004, pet. denied).

Defendants correctly assert that it is irrelevant if Plaintiffs' expressly state they are not pursing any claims under the TTCA. The TTCA still applies to common law assertions of negligence, gross negligence, bystander liability, and intentional infliction of emotional distress. The Texas Supreme Court reached this conclusion "because the TTCA [is] the only avenue for common-law recovery against a governmental unit, all tort claims against such units [are] assumed to be 'under this chapter' for purposes of § 101.106." *Bustos v. Martini Club*, 599 F.3d 458, 463 (5th Cir. 2010) (quoting *Mission Consol. Indep. Sch. Dist. V. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

Regarding the individual defendants, section 101.106 provides:

> (a)  The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter. . . .
>
> (e)  If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.106(a), (e). Because Plaintiffs named Johnson County as a defendant, Plaintiffs cannot recover against any of the individual employees of the County for claims involving the same subject matter.

Plaintiffs are correct that the TTCA does not provide immunity to the Defendants for the section 1983 claims. *See Monell*, 436 U.S. at 690-91 (municipal liability); *Dibrell v. Huber*, 2006 WL 14570 at *3 (S.D. Tex. 2006) (individual employee of government unit

MEMORANDUM OPINION AND ORDER – PAGE 21

liability).  Nevertheless, the holdings in the cited cases have no bearing on the Plaintiff's state common law claims of negligence, gross negligence, bystander liability, and intentional infliction of emotional distress.  For the above reasons, the Court dismisses these claims in their entirety against both the County and the individual defendants.

### VIII.  PLAINTIFFS PLED SUFFICIENT FACTS FOR PUNITIVE DAMAGES CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Punitive damages are allowed "in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct."  *Smith v. Wade*, 461 U.S. 30, 33 (1983).  To award punitive damages, Plaintiffs must show that Defendants' conduct amounts to "a reckless or callous disregard of, or indifference to, the rights or safety of others."  *Id.*  Plaintiffs alleged knowing and conscious deliberate indifference to McKinney's court-ordered medical needs that ultimately resulted in his death.  At the pleadings stage, Plaintiffs' allegations are sufficient to establish a claim for punitive damages against the individual defendants.  Accordingly, the Court denies Defendants' motion to dismiss the claims for punitive damages against individual defendants.

### CONCLUSION

The Court concludes that Plaintiffs' Second Amended Complaint validly states section 1983 claims:

1. against Defendants Gordy, Lawrence, Tunnel, Fuller, Frias, Roden, Flores, Young, Arevalo-Braddick for their deliberate indifference to McKinney's medical needs;

2. against Defendants Lawrence and Gordy for their failure to supervise; and

3. against Johnson County for its *de facto* custom of deliberate indifference to inmate's medical needs.

In addition, the court denies dismissal of Plaintiffs' claim for punitive damages. The court dismisses section 1983 claims against Defendants King and Blakenship for failure to allege a pattern of sufficiently similar constitutional violations. The Court also dismisses all state law claims of negligence, gross negligence, and intentional infliction of emotional distress against all defendants. The Court therefore grants in part and denies in part Defendants' motions in accordance with these conclusions.

Signed December 19, 2023.

David C. Godbey
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 23